UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JASON WALTON** : | | **DOCKET NO. 17-cv-1180** |
| **DOC # 477576** | | **SECTION P** |
| **VERSUS** : | | **UNASSIGNED DISTRICT JUDGE** |
| **JOHN F. DEROSIER, ET AL.** : | | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are the civil rights complaint [doc. 1] and Amended Motion for Production [doc. 7] filed pursuant to 42 U.S.C. § 1983 by plaintiff Jason Walton, who is proceeding *pro se* and *in forma pauperis*. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court.

**I.**
**BACKGROUND**

Walton alleges that John F. DeRosier, District Attorney for the 14th Judicial District, Calcasieu Parish, Louisiana, and Carla Sigler and Kaitlyn Abshire, employees of the Calcasieu Parish District Attorney's Office ("CPDAO"), have violated his rights under "Brady, and the Due Process Clause of the Fourteenth Amendment" by withholding exculpatory evidence and public records. Doc. 1, p. 3. Specifically, he states that he requested files from the CPDAO three years ago so that he could prepare his application for post-conviction relief, and that that these files contain material evidence supporting his claim of actual innocence. *Id.* However, he maintains that the custodian of records at the CPDAO is arbitrarily and capriciously withholding the files. *Id.* He

now seeks relief through this suit, requesting that the CPDAO be ordered to turn over his file and that he be awarded damages as well as court costs and attorney's fees. *Id.* at 4.

We conducted an initial review of Walton's complaint and noted that it was deficient in a number of respects, chiefly for his failure to allege a constitutional violation based on either *Brady v. Maryland*, 83 S.Ct. 1194 (1963) or a denial of access to the courts. Doc. 5. Through that order Walton was given until January 29, 2018 to amend his complaint and correct the deficiencies identified. *See id.* That date has passed and Walton has not filed an amended complaint. Instead, on or about January 24, 2018, he submitted an "Amended Motion for Production of Specific Documents Under Particularized Need," in which he expands on his constitutional arguments. Doc. 7; *see* doc. 7, att. 1 (providing filing date). Accordingly, we review that motion to complete the frivolity review begun under our previous order.

## II.
## LAW & ANALYSIS

### A. *Frivolity Review*

Walton has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be

granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### B. *Section 1983*

Federal law provides a cause of action against any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus the initial question is whether the plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim that would entitle plaintiff to relief. In order to hold the defendants liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law; that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988).

### C. *Theories of the Complaint*

In our previous order we stated:

> Walton's claims are premised on the theory that *Brady v. Maryland*, 83 S.Ct. 1194 (1963), in which the Supreme Court held that the prosecution's withholding of exculpatory evidence during a criminal trial violated the defendant's Fourteenth Amendment right to due process, also creates post-conviction rights for the defendant. However, the Supreme Court considered and rejected this argument in *District Attorney's Office for Third Judicial District v. Osborne*, 129 S.Ct. 2308 (2009). Instead, the Court held, the states have more flexibility in determining what rights are required on post-conviction relief and a state's post-conviction framework only violates the convicted offender's right to due process if the consideration of the offender's claim within that framework "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation." *Id.* at 2320–21 (internal quotations omitted). Walton has not alleged the manner in which he made his requests or the reasons offered for denial. Accordingly, he has not provided sufficient information to plead a due process violation under this high standard.
>
> Walton's allegations may also be construed as a claim of denial of access to the courts. However, such a claim requires an actual injury, which

> a complainant cannot demonstrate without showing the existence of an arguable and non-frivolous underlying action. *Mendoza v. Strickland*, 414 Fed. App'x 616, 619 (5th Cir. 2011) (citing *Christopher v. Harbury*, 122 S.Ct. 2179 (2002)). Walton's conclusory assertions of actual innocence are not sufficient to show that he has arguable and non-frivolous claims for post-conviction relief.

Doc. 5, pp. 3–4. In his motion, Walton again cursorily asserts his claim of denial of access to the courts but fails to cure the deficiencies above. Doc. 7, p. 3. Accordingly, this claim should be dismissed as frivolous. He also argues that a state statute, which limits the rights of the incarcerated to make public records requests, violates his rights to equal protection and due process. *Id.* Finally, he alleges that he received ineffective assistance from his trial attorney and that it was error, amounting to malfeasance and denial of his right to procedural due process, for the public records custodian to withhold his files. *Id.*

### 1. *Equal Protection challenge*

Walton is complaining about a provision of the Louisiana Public Records Law, Louisiana Revised Statute § 44:31.1, which states the exceptions to § 44:31. Section 44:31 provides:

> A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
> B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
> (2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
> (3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.

The exceptions provision states:

> For the purposes of this Chapter, person does not include an individual in custody after sentence following a felony conviction who has exhausted his appellate remedies when the request for public records is not limited to grounds upon which the individual could file for post conviction relief under Code of Criminal Procedure Article 930.3. Notwithstanding the provisions

> contained in R.S. 44:32, the custodian may make an inquiry of any individual who applies for a public record to determine if such individual is in custody after sentence following a felony conviction who has exhausted his appellate remedies and the custodian may make any inquiry necessary to determine if the request of any such individual in custody for a felony conviction is limited to grounds upon which such individual may file for post conviction relief under Code of Criminal Procedure Article 930.3.

*Id.* at § 44:31.1. The statute also allows the public records custodian to make an inquiry of any applicant to determine if this exception applies.

Walton argues that these statutes violate the Equal Protection Clause because of the distinction applied to convicted felons who are in custody.[1] Doc. 7, pp. 3–6. It is not clear if and how this distinction was applied in his case, because he indicates that he was ultimately told that he could obtain the records in question. *See id.* at 7, 10. Nevertheless, we assume for the sake of argument that § 44:33.1 did have some role in the delay alleged in Walton's case and examine his Equal Protection challenge.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," thus mandating "that all persons similarly situated should be treated alike" by the government. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 105 S.Ct. 3249, 3254 (1985). When a statute classifies by race, alienage, or national origin, it is subject to strict scrutiny. *Id.* Classifications based on gender are also subject to a heightened standard of review. *Id.* at 3254–55. However, "if a law neither burdens a fundamental right nor targets a suspect class, [the legislative classification will survive] so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 116 S.Ct. 1620, 1627 (1996).

---

[1] Walton also makes a cursory assertion under this claim of violation of his right to procedural due process, but only briefs that claim under "Issue Number Three" of his motion. *See* Doc. 7, pp. 7–10. Accordingly, we consider it there instead.

Walton maintains that the statute is entitled to heightened scrutiny because it discriminates based on conviction history and custodial status. He points to Article I, Section 3, of the 1974 Louisiana Constitution, the Declaration of Right to Individual Dignity. Doc. 7, pp. 3–4. In relevant part, that section provides that "[n]o law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of," inter alia, "physical condition."[2] LA. CONST. art. I, § 3. The Louisiana Supreme Court has held that classifications based on physical condition are entitled to heightened scrutiny. *Sibley v. Board of Supervisors of Louisiana State Univ.*, 477 So.2d 1094 (La. 1985). The holding, however, was based explicitly on state law/constitutional grounds, with the court stating:

> We conclude that the federal jurisprudence should not be used as a model for the interpretation or application of that part of the Louisiana Declaration of Rights dealing with individual dignity which is at issue in this case. The federal three level system is in disarray and has failed to provide a theoretically sound framework for constitutional adjudication. Also, as we will endeavor to demonstrate, the state constitution calls for more than minimal scrutiny of certain types of classifications, and assigns the state the burden of showing that such legislation is not arbitrary, capricious or unreasonable.

*Id.* at 1107.

Violations of state law, without more, do not support a claim for relief under § 1983.[3] Under established Fourteenth Amendment jurisprudence, neither classifications based on the type of offense committed nor those based on incarceration status implicate a suspect class. *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821–22 (5th Cir.

---

[2] Walton, however, provides no authority to show that Louisiana courts consider incarceration status to be a "physical condition" under this provision.

[3] *See Daniels v. Williams*, 106 S.Ct. 662, 666 (1986) (noting that violations of state law do not become constitutional violations just because the defendant is a state official); *Taylor v. Sterrett*, 600 F.2d 1135, 1141–46 (5th Cir. 1979) (requiring district court that had intervened on the basis of state law violation to discontinue exercise of its jurisdiction and dismiss the cause); *Diamond v. Thompson*, 364 F.Supp. 659, 662 (M.D. Ala. 1973) (stating that federal courts "will intervene in the administration of the prison system only where it is necessary to preserve constitutional rights."), *aff'd*, 523 F.2d 1201 (5th Cir. 1975).

1997). Accordingly, Walton fails to show entitled to heightened scrutiny and the statute is instead only entitled to rational basis review.

As stated above, rational basis review asks whether the difference in treatment between the classes "rationally furthers a legitimate state interest." *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016). As the Supreme Court has recognized, "legitimate public policies [may] justify the incidental disadvantages [that laws] impose on certain persons." *Romer*, 116 S.Ct. at 1628. "Like all rational actors with limited resources, a government actor must reach its abstract goal by a series of practical requirements and easily-administered rules judged to be reasonable surrogates for it." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 355 (5th Cir. 2017). Furthermore, this standard merely requires that the rational basis at issue "may conceivably or . . . reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Id.* (quotations omitted). Under this standard, therefore, the plaintiff must allege facts supporting a finding that the government can offer no rational basis to support the challenged law. *F.C.C. v. Beach Comms.*, 113 S.Ct. 2096, 2101–02 (1993).

Here we can readily identify a rational basis for the limitations on prisoners' abilities to obtain public records. The number of lawsuits filed by prisoners rose sharply between 1975 and 1994. *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998). Furthermore, as Congress concluded after its hearings on the Prison Litigation Reform Act, "prisoners file more frivolous lawsuits than any other class of persons." *Id.* The exception in § 44:33.1 preserves an inmate's right to obtain records when he can show their relevance to his efforts to obtain post-conviction relief, while at the same time limiting the number of requests to which the custodian must respond and, by extension, the number of suits the court must entertain by restricting the inmate's ability

to conduct fishing expeditions. Accordingly, Walton's Fourteenth Amendment claims should be dismissed as frivolous and failing to state a claim on which relief may be granted.

### 2. *Ineffective assistance of counsel*

Walton next argues that "[t]he question still remains whether or not legal counsel . . . was effective according to her professional obligation" to secure his right to procedural due process during "the trial stages and . . . all pretrial hearings." Doc. 7, p. 6. He notes that his trial counsel underwent disciplinary proceedings around the time of his conviction. *Id.*

As the Fifth Circuit has explained, claims for equitable relief based on ineffective assistance of counsel and other trial deficiencies call into question the validity of the plaintiff's conviction and are thus subject to the bar set out by the Supreme Court in *Heck v. Humphrey*, 114 S.Ct. 2364 (1994).[4] *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996). Accordingly, they cannot be asserted in a § 1983 suit for damages unless the petitioner's conviction has been called into question through a federal court's issuance of a writ of habeas corpus, or otherwise reversed. *Id.* Walton's efforts at seeking habeas relief under 28 U.S.C. § 2254 in this court were denied as time-barred, and there is no record that his conviction has been invalidated or otherwise called into question in any other state or federal proceeding. *See Walton v. David Wade Corr. Ctr.*, No. 2:16-cv-275 (W.D. La. Sep. 27, 2016). Accordingly, this claim should be dismissed, though such dismissal should be without prejudice to Walton's ability to reassert it in the event that the *Heck* conditions are met.

---

[4] Under *Heck*, the Court held that a claim that implicated the validity of a conviction was not cognizable under § 1983 unless the plaintiff could show that the conviction "had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 114 S.Ct. at 2372.

### *3. Malfeasance/Procedural Due Process*

Lastly, Walton alleges that the public records custodian erred in his handling of Walton's records requests, committing malfeasance in office and violating his right to procedural due process.

To establish his procedural due process claim, Walton must demonstrate (1) that he was deprived of a property interest protected by the Fourteenth Amendment, and (2) that the process attendant to the deprivation was constitutionally deficient. *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 92 S.Ct. 2701, 2709 (1972). "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995).

The records Walton seeks, as shown through his exhibit [doc. 1, att. 2], are the district attorney's file from his criminal conviction. Under the Louisiana Public Records Law, certain records, including those held by a district attorney's office, are exempt from general disclosure requirements. LA. REV. STAT. § 44:3. The Louisiana Code of Criminal Procedure provides:

> [I]f at any time after sentence is imposed, the defendant seeks the production of all or any portion of the district attorney's file in a criminal proceeding, the request for production shall be presented by written motion, which shall be tried contradictorily with the district attorney.

LA. C. CR. P. art. 822(B). It is not clear if Walton filed a motion, but he did make his request by a letter dated October 23, 2014, to Carla Sigler, assistant district attorney and custodian of records for the Calcasieu Parish District Attorney's Office. Doc. 1, att. 2, pp. 1–3. Sigler responded, in

letters dated November 3, 2014, and March 26, 2015,[5] stating that she was "still looking for the file and [would] continue looking for it." *Id.* at 4–5. She also stated that she would inform him if and when the file was found, and that these letters satisfied her "legal obligation under the Public Records Law, LSA-R.S. 44:1 et seq." *Id.* On November 6, 2017, according to Walton, Sigler responded again, apparently having located the file, and stated that he could obtain the requested records if he provided the $200 fee for reproducing them. Doc. 7, pp. 7, 10.

Assuming, for the limited sake of this review, that Walton had a property interest in the district attorney's records, he cannot show that the procedure for obtaining them – either as provided under Louisiana law or as allegedly applied in his case – was constitutionally deficient. Louisiana law also provides that "reasonable fees" may be collected for copies of public records, in advance of production. LA. REV. STAT. § 44:32(C)(1)(a). Walton does not allege that Sigler is limiting what records will be made available to him. Accordingly, he has not shown any denial of records.

Instead Walton's chief complaint now appears to be based on the delay. Walton alleges that Sigler failed to fulfill her duties under the Louisiana Public Records Law, to maintain the records and to promptly certify the reason for their absence and their location. LA. REV. STAT. §§ 44:34, 36. What Walton ignores, however, is that the statute also provides an enforcement provision that allows persons denied access to their records to institute proceedings for a writ of mandamus.[6] *Id.* at § 44:35. Walton does not show that he sought any relief from the denial in the state courts. He cannot show a constitutional claim based on the delay because it does not appear

---

[5] Walton indicates that he sent another request on March 16, 2015. Doc. 1, att. 2, p. 4.

[6] We note that, despite the distinction applied for convicted felons who are serving their sentences under § 44:33.1, supra, there appears to be no limit on the right of such inmates to seek relief under § 44:35. *See, e.g.*, *Pierre v. East Baton Rouge Par. Clerk of Court*, ___ So.3d ___, 2017 WL 4958560 (La. Ct. App. 1st Cir. 2017) (finding that inmate was not entitled to relief under § 44:35 because he had not filed an application for post-conviction relief and therefore did not have a right of access to the district attorney's file under § 44:31.1).

-10-

that he availed himself of the available methods for disputing Sigler's representations and obtaining the records at issue. Furthermore, because the records are now available to him, his time for seeking a writ of mandamus and then demonstrating any constitutional injury from its denial has passed. Accordingly, this claim should likewise be dismissed as frivolous and failing to state a claim on which relief can be granted.

### III.
#### CONCLUSION

For reasons stated above, **IT IS RECOMMENDED** that Walton's claims be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), **WITH PREJUDICE** as to his access to the courts, Fourteenth Amendment, and malfeasance claims, and **WITHOUT PREJUDICE** as to his ineffective assistance claim. Our finding of prematurity and dismissal without prejudice on the ineffective assistance claim should not prevent this dismissal from counting as a strike under 28 U.S.C. § 1915(g) if this recommendation is adopted. *See Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463–64 (5th Cir. 1998).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 5th day of February, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE